**FIRST STATE LIFE INSURANCE INVESTORS, INC., a Delaware corporation, Plaintiff,**

v.

**20TH CENTURY CORPORATION, a corporation of the Commonwealth of Pennsylvania, Defendant.**

**Civ. A. No. 3645.**

United States District Court
D. Delaware.
Dec. 30, 1969.

H. James Conaway, Jr., of Young, Conaway, Stargatt & Taylor, and C. Waggaman Berl, Jr., of Booker, Leshem, Green & Shaffer, Wilmington, Del., for plaintiff.

S. Samuel Arsht and Lewis S. Black, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for defendant.

## OPINION

LAYTON, District Judge.

The opinion of this Court dated December 16, 1969, was withdrawn by order dated December 30, 1969, and this opinion is herewith substituted in lieu thereof.

Plaintiff, First State Life Insurance Investors, Inc. (Investors) caused the organization of First State Life Insurance Company of America (First State Life) for the purpose of the latter engaging in the business of selling life insurance.

Investors attempted to raise the necessary funds ($150,000) needed to obtain a certificate of authority for First State Life to do business in Delaware from the sale of its stock. However, the sale of these shares was preliminarily enjoined by this Court by an order filed May 10, 1967, in S.E.C. v. First State Life Ins. Investors, Inc., C.A. No. 3353.[1] Thereafter, Investors' president proposed to defendant, 20th Century Corporation, a corporation of the Commonwealth of Pennsylvania (20th Century), that it participate in refinancing First State Life. 20th Century was interested in this proposal and on May 12, 1967, wrote a letter to Commissioner Short, the State Insurance Commissioner of Delaware, outlining a plan which it proposed to submit to the officers, directors and incorporators of Investors and First State Life, and requesting an indication whether, if the plan were accepted, he would issue a certificate of authority to First State Life.

In essence, the plan called for the purchase of approximately 500,000 shares of First State Life by 20th Century for $250,000 and the issuance of 55,420 shares of First State Life to Investors in return for the remaining cash and fixed assets of Investors. Thus, under the terms of the plan, 20th Century would pay 50 cents per share for the stock of First State Life while Investors would pay approximately 18 [2] cents per share.

Although the letter of May 12 was directed to Commissioner Short, the proposed plan of 20th Century embodied therein was subsequently submitted to the stockholders of Investors and was approved at a meeting on July 7, 1967. Three days after the stockholders meeting, the plan was submitted to this Court and was approved by Judge Wright by order filed August 10, 1967.

Thereafter, on August 21, 1967, the incorporators of First State Life held a meeting and elected two 20th Century officers, E. Earl Taylor and James G. Robertson, and F. Graham Main (later to become associated with 20th) to its board of directors. The new directors subsequently held one meeting in Harrisburg on August 31, 1967, at which certain organizational steps were taken such as the election of officers, and discussions relating to the amendment of the par value of the stock of First State Life.

Thereafter, the new First State Life officers undertook negotiations with

---

1. This temporary injunction became final on October 24, 1967. The underlying reason was that substantial funds realized from initial sales of Investors' stock had been wrongfully dissipated by its officers and directors.

2. This represents an almost 100% overevaluation by Investors of the value of its assets which, actually, approximate $5000, or slightly in excess of 9 cents per share.

Commissioner Short looking to the issuance of a certificate of authority for a life insurance company in order to consummate the plan, but it soon became clear to them that the Commissioner did not intend to issue such a certificate to First State Life. At the same time, 20th Century became increasingly concerned that Investors did not have sufficient assets to pay for the shares to be issued to it under the plan even at the 18 cent per share figure which, as indicated in the notice to stockholders of the July 7th meeting, was substantially less than the price that 20th Century would pay under the plan.

As a result, on December 18, 1967, Messrs. Taylor, Main and Robertson submitted their designations as directors and officers of First State Life to its incorporators,[3] and the certificate of incorporation of First State Life was never amended to change its name or reduce the par value of its stock.

As a result, Investors brought this action against 20th Century. The prayers for relief are:

(1) That defendant's officers and directors cause First State Life to issue 55,000[4] shares of its stock to Investors in return for all Investors' assets.

(2) That defendant's officers and directors cause First State Life to issue 500,000 shares of its stock to itself (20th Century) and, in turn, pay to First State Life $250,000.

Defendant has filed motions to dismiss for the reasons that (1) no valid service has been made upon it; (2) that the required jurisdictional amount is not present and (3) First State Life must be joined as an indispensable party.

Passing by the first two questions, the motion to dismiss for failure to join an indispensable party must be granted. Rule 19, F.R.Civ.P. The relief contemplated requires First State Life to perform affirmative acts (a) issue 55,000 shares of its stock to Investors and receive in consideration thereof certain assets of Investors and (b) issue 500,000 shares of its stock to defendant (20th Century), and receive in consideration therefor $250,000 from 20th Century. In order to fashion a decree carrying out the prayers for relief, First State Life must perform certain acts and functions. Accordingly, in my view, it is an indispensable party. Harvey Aluminum v. American Cyanamid Co., 203 F.2d 105 (2d Cir.); Elster v. American Airlines, 34 Del.Ch. 500, 106 A.2d 202; Shore v. Union Drug Co., 159 A. 371 (Del.Chancery). Despite the fact that it is a mere corporate shell having an equivocal status, it must be joined. The problem of this joinder raises a number of vexing problems which the plaintiff must analyze and solve.[5]

Submit an order in accordance with the above.

---

3. "Any director may resign at any time upon written notice to the corporation." T. 8 Del.C., Sec. 141(b).

4. The bill of complaint contains a number of erroneous statements. The correct number of shares to be issued by First State Life to Investors was 55,420. The statement that the assets of Investors to be turned over to First State Life (furniture, automobile and cash) was the equivalent of 18 cents per share is incorrect. The furniture and automobiles are valueless. The complaint refers to First State Life as "Twentieth Century Life." The name of First State Life was never changed.

5. For instance, is there not an adequate remedy at law? Can First State Life be aligned as a party without destroying diversity? If so, will the required jurisdictional amount be present? How, if at all, can life be breathed into the corporate shell—by the appointment of a receiver?